**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Fort Lauderdale Division**

RAMI GHASSAN BEZRAH, individually;   Case No.:
AMRO RAMI BEZRAH, individually;
KRB, a minor, by and through
his father and next friend,
LRB, a minor, by and through
her father and next friend,
ARB, a minor, by and through
her father and next friend,

    *Plaintiffs,*

v.

BAHIEH ALI OMAR QUSHAIR, individually,

    *Defendant.*

_____/

**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,**
**AND OTHER RELIEF**
**(JURY TRIAL DEMANDED)**

COMES NOW the Plaintiffs, RAMI GHASSAN BEZRAH, AMRO RAMI

BEZRAH, KRB (a minor), LRB (a minor), and ARB (a minor), by and through the

undersigned counsel, file this Complaint against Defendant BAHIEH ALI OMAR

QUSHAIR, individually, and allege as follows:

## I.  JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction pursuant to **28 U.S.C. § 1332** (diversity of citizenship). The amount in controversy exceeds $75,000.00, exclusive of interest and costs. Complete diversity exists because Plaintiffs are citizens and residents of the People's Republic of China, and Defendant is a resident of Broward County, State of Florida.

2.  This Court has federal question jurisdiction pursuant to **28 U.S.C. § 1331** with respect to claims arising under 18 U.S.C. § 2261A (federal cyberstalking), 18 U.S.C. § 2511 (federal wiretap act), and 18 U.S.C. § 875 (interstate threats).

3.  Venue is proper in the Southern District of Florida pursuant to **28 U.S.C. § 1391(b)** because Defendant resides in Broward County, Florida, which lies within this District, and a substantial portion of the acts and omissions giving rise to these claims occurred in or were directed from this District.

## II.  THE PARTIES

4.  Plaintiff RAMI GHASSAN BEZRAH ("Rami" or "Father") is a Palestinian national who has lawfully resided in Guangzhou, People's Republic of China for approximately twenty-five (25) years. He is a businessman whose commercial activities extend across Palestine, Israel, the United States, and the Gulf Arab states. He is a citizen and resident of China for diversity purposes and resides at Room 1001, C Building, ZhuJiang Di Jing, Kelai Apartment, Haizhu District, Guangzhou, China.

5.  Plaintiff AMRO RAMI BEZRAH is the eldest son of Plaintiff Rami Ghassan Bezrah, age eighteen (18), and resides with his father at the above-stated address in Guangzhou, China. He brings this action in his individual capacity.

6.  Plaintiff KRB is a minor, age sixteen (16), who resides with his father in Guangzhou, China. He brings this action by and through his father and next friend, Rami Ghassan Bezrah.

7.  Plaintiff LRB is a minor, age fourteen (14), who resides with her father in Guangzhou, China. She brings this action by and through her father and next friend, Rami Ghassan Bezrah.

8.  Plaintiff ARB is a minor, age eight (8), who resides with her father in Guangzhou, China. She brings this action by and through her father and next friend, Rami Ghassan Bezrah.

9.  Defendant BAHIEH ALI OMAR QUSHAIR, individually, ("Defendant" or "Qashir") is an individual holding both Palestinian and Jordanian citizenship, presently residing at 5460 NW 49th Avenue, Coconut Creek, Florida 33073, located in Broward County, Florida. She is a temporary resident of the United States and is employed by MAQ Group and volunteers at a human rights organization. She is the former spouse of Plaintiff Rami Ghassan Bezrah and the biological mother of Plaintiffs Amro, Kareem, Leen, and Alma Bezrah.

### III.  GENERAL FACTUAL ALLEGATIONS

#### A.  Background

10. Rami Ghassan Bezrah is a Palestinian businessman of reputable commercial standing who has resided in China for twenty-five (25) years. His four children have resided with him in Guangzhou for approximately five (5) years.

11. The children's relocation to China was initiated and facilitated by Defendant herself. Defendant personally submitted the children's Chinese visa applications and personally accompanied the children to the airport on the day of their departure. No court order prohibited the children's relocation, and no objection was filed with any court or consulate at that time.

12. An official document issued by the competent court and the Chinese Consulate in Ramallah confirms the absence of any legal objection to the children's travel, establishing that their relocation was carried out lawfully and with formal, certified authorization.

13. The children have established with their Father's guidance a well-adjusted, and prosperous life in China: they are enrolled at the internationally recognized Canadian International School in Guangzhou; each child possesses independent contact numbers and personal social media accounts; and the children have traveled internationally to Thailand, the United Kingdom, and the United Arab Emirates using their own passports. They communicate freely with the outside world without restriction.

**B.  Defendant's Campaign of Harassment and Defamation**

14.  Notwithstanding the foregoing, beginning on **April 11, 2026** and continuing **on a near-daily basis** until **May 12, 2026, when Defendant deactivated her social media accounts,** Defendant launched a sustained, premeditated, and multi-platform campaign against Plaintiffs utilizing social media, online live broadcasts, and electronic communications all transmitted through interstate and international channels of commerce.

15.  Defendant's campaign has accumulated over one hundred fifty thousand (150,000) documented views across platforms and has been conducted in both Arabic and English, with Defendant's own stated objective of reaching American, European, and Palestinian audiences. This multilingual, geographically targeted strategy demonstrates premeditated intent to cause maximum reputational and commercial harm to Plaintiffs.

16.  Defendant has employed a deliberate evidence-concealment strategy: she publishes the offending content, then deletes it within forty-eight (48) to seventy-two (72) hours in an apparent attempt to destroy evidence. Notwithstanding this strategy, Plaintiffs have captured, recorded, and preserved the entirety of Defendant's published content.

17.  On or about May 5, 2026, counsel for Plaintiffs transmitted a demand letter to Defendant requiring retraction and correction (See Composite Exhibit "A") https://www.fedex.com/fedextrack/?trknbr=871396968971&trkqual=2461165000~871396968971~FX&simplified=true

18.     Rather than comply, Defendant responded by publishing new posts explicitly naming Rami Bezrah and his mother and disseminating claims accusing them of child abduction and alleging that they had deprived Defendant of her children.

19.     Specifically, on May 3, 2026, on Facebook, Instagram, and TikTok, Defendant posted the following statement[1]:

> " It's shameful. You are an older woman talking to a 14 years old child then going around saying I am oppressed I did not say anything, oh Bahiyya , oh Shireen , oh please people , oh world , I am oppressed they are lying,
> You betrayed your own husband and covered it up even your own children's know who you are cheated on your husband with , however, I am not going to mention any names, especially the men who had homosexual (Sodomy) with your son Rami, I know their names.
> If you wear an unfaithful wife that does not give you the right to torture us ( your sons wives ) imprison us humiliate us and belittle us, just because you did something wrong in your life.
> Let me put all of that on the side. My son is a 14 years old boy and you are telling him to go carry out Terroristic acts. He is only 14 years old. Yes he is tall strong and handsome and do you know that we are permitted and we carry permits to enter regularly into Israel , and Israel's used to think that my son is a foreigner, and you tell him to become a hero like his father's relative the one who went to prison and he's out now and doing well.
> This is a child and you are encouraging him for religious reasons to go carry out a suicide attack.
> You are crazy. You are crazy instead of telling him to study hard to become a new kid Clear scientist to represent our country at the highest level and become a successful person. You are a crazy woman. You are a crazy woman."

20.     This post was removed on May 7, 2026, four (4) days after publication. Despite such removal, during the time the post was active it received in excess of one

---

[1] Such statements were published on the following now deactivated social media platforms:
• Facebook: Adv Baheya Qushair
https://www.facebook.com/share/18hyM8AKA8/?mibextid=wwXIfr
• Instagram: @baheya_aq
https://www.instagram.com/baheya_aq?igsh=MWl5eDgzb3lqbDRxeg==
• TikTok: BaheyaQushair

hundred and ninety thousand (190,000) views on a single video alone, with tens of thousands of additional views across other published content during the same period. The number of likes and comments cannot be determined with precision as Defendant subsequently deactivated her accounts. Notwithstanding the deletion of said content, the videos were preserved and saved by viewers and continue to circulate online to this day. Demonstrating the post was widely viewed, and the nature of the comments emphasize the incredible potential for reputational damage, and the false allegations against Older Son Amro Bezrah Instigated by the paternal grandmother of supporting or engaging in terrorism against the State of Israel (although he was 12 years old at that time).

21. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered, and continue to suffer, severe reputational harm, commercial harm, and emotional distress. The minor Plaintiffs have experienced acute psychological distress, including shame and embarrassment before their peers and classmates resulting from Defendant's publications about their father and family.

## COUNT I
### FILING A FALSE POLICE REPORT
*(Florida Statute § 837.05 / Federal False Statements — 18 U.S.C. § 1001)*
(Against Defendant Qashir)

22. Plaintiffs reallege and incorporate by reference Paragraphs one (1) through twenty (20) as if fully set forth herein.

23. Defendant filed a complaint with the Miami Police Department, on or about April 13, 2026, falsely and with knowledge of its falsity, alleging that Plaintiff Rami Ghassan Bezrah, who resides in China and has not visited the United States, had

threatened to kill her. This allegation was fabricated in its entirety and wholly without evidentiary basis.

24. Defendant contemporaneously documented her act of filing the false report by filming herself outside the Miami Police Department headquarters and publishing the footage across two (2) separate social media recordings. This self-documentation establishes that Defendant's objective was not merely to file a police report, but rather to deliberately create a media record for the express purpose of publicly damaging Plaintiff's reputation and generating the appearance of legitimate legal process where none existed.

25. This conduct constitutes a knowing and willful filing of a false police report in violation of Florida Statute § 837.05, and, to the extent the false report was made to federal authorities or transmitted through interstate communications, in violation of 18 U.S.C. § 1001.

26. As a direct and proximate result of Defendant's false police report, Plaintiff Rami Ghassan Bezrah has suffered reputational harm, commercial harm, and severe emotional distress in an amount to be proven at trial.

## COUNT II
### CYBERSTALKING
*(18 U.S.C. § 2261A — Federal Cyberstalking Statute)*
(Against Defendant Qashir)

27. Plaintiffs reallege and incorporate by reference Paragraphs one (1) through twenty (20) as if fully set forth herein.

28. Pursuant to 18 U.S.C. § 2261A(2), it is unlawful to use any facility of interstate or foreign commerce, or electronic communication service or interactive computer

service, to engage in a course of conduct that places a person in reasonable fear of death or serious bodily injury, or causes, attempts to cause, or would reasonably be expected to cause substantial emotional distress to a person or an immediate family member.

29.   Defendant, using social media platforms and electronic communications transmitted through interstate and international channels, conducted a systematic and sustained course of conduct against Plaintiffs, including the following acts:

(a) Publishing serious and unsubstantiated accusations against Plaintiff Rami Ghassan Bezrah including allegations of sodomy, group sexual acts, extortion of and filming of young women, currency counterfeiting, commercial corruption, and bribery of Palestinian government officials — all without any supporting evidence;

(b) Publicly accusing Plaintiff Amro Rami Bezrah's paternal grandmother of inciting Plaintiff Amro Rami Bezrah (age 18) to commit acts of terrorism, causing documented psychological harm to Plaintiff Amro and the minor Plaintiffs during a critical period as Amro prepares to enter university (See ¶ 18 Supra.);

(c) Publishing a video of Plaintiff Amro Rami Bezrah, where Defendant is filming her Son without his consent, in which he was visibly coached to recite predetermined statements; the minor's visible anxiety, psychological distress, and explicit request to stop filming were ignored;

(d) Directing accusations of marital infidelity and additional moral accusations at Plaintiff Rami's mother, a prominent and socially respected woman from a conservative family, causing severe reputational harm and widespread public controversy in addition to Allegations involving Rami's sisters claims that Rami's mother is encouraging them to bring unrelated men in order to become pregnant and give birth to a male child ; and

(e) Continuing her campaign after receipt of the demand letter dated May 5, 2026, including publishing new posts explicitly naming Rami Bezrah and his mother, accusing them of child abduction, and claiming deprivation of her children.

https://www.fedex.com/fedextrack/?trknbr=871396968971&trkqual=2461 165000~871396968971~FX&simplified=true

30. Defendant's conduct constitutes a "course of conduct" as defined by 18 U.S.C. § 2261A, sustained over a period of months, utilizing interactive computer services and electronic communications in interstate and international commerce.

31. Defendant's conduct caused, and would reasonably be expected to cause, substantial emotional distress to Plaintiffs and their immediate family members, including the minor Plaintiffs.

32. As a direct and proximate result of Defendant's cyberstalking, Plaintiffs have suffered damages including severe emotional distress, reputational harm, and other compensatory and consequential damages in an amount to be proven at trial, together with reserving the right to seek punitive damages.

## COUNT III
## UNLAWFUL RECORDING AND PUBLICATION OF PRIVATECOMMUNICATIONS
*(18 U.S.C. § 2511 — Federal Wiretap Act)*
(Against Defendant Qashir)

33. Plaintiffs reallege and incorporate by reference paragraphs one (1) through twenty (20) as if fully set forth herein.

34. The Federal Wiretap Act, 18 U.S.C. § 2511, prohibits the intentional interception, disclosure, or use of any wire, oral, or electronic communication without the consent of all parties to the communication.

35. Defendant recorded and published private telephone calls and WhatsApp conversations without the knowledge or consent of the other parties to those communications, including conversations involving Plaintiff Amro Rami Bezrah and Plaintiff Rami Ghassan Bezrah.

36. Defendant thereafter transmitted and published these unlawfully recorded communications on social media platforms accessible through interstate and international channels of commerce, further compounding the violation by publicly disclosing the contents of private communications.

37. Defendant's conduct in recording, intercepting, disclosing, and publishing private electronic communications without the consent of all parties constitutes a violation of 18 U.S.C. § 2511.

38. Pursuant to 18 U.S.C. § 2520, any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of Chapter 119 of Title 18 may maintain a civil action against any person who intercepts, discloses, or uses such communications. Plaintiffs are entitled to recover

the greater of actual damages or statutory damages of $100 per day per violation or $10,000, whichever is greater, plus punitive damages, attorney's fees, and costs.

## COUNT IV
### DEFAMATION AND LIBEL
*(Florida Statute § 770.01 and Florida Common Law)*
(Against Defendant Qashir)

39. Plaintiffs reallege and incorporate by reference paragraphs one (1) through twenty (20) as if fully set forth herein.

40. To the extent required by Florida Statute § 770.01, Plaintiff provided written notice of Defendant's defamatory publications to Defendant on or about May 5, 2026 (See Composite Exhibit "A" and Footnote 1 *Supra*.), through counsel's demand letter. Defendant failed to publish a full and fair retraction within the time allowed by law and, to the contrary, intensified her defamatory campaign following receipt of said notice.

41. Defendant published false statements of fact concerning Plaintiffs, including but not limited to the following per se defamatory statements: (a) that Rami Ghassan Bezrah engaged in sodomy; (b) that he participated in group sexual acts; (c) that he extorted and filmed young women; (d) that he engaged in currency counterfeiting; (e) that he engaged in commercial corruption; (f) that he bribed Palestinian government officials; (g) that he abducted his children; and (h) that Plaintiff Amro Rami Bezrah's paternal grandmother incited Plaintiff Amro Rami Bezrah to commit acts of terrorism.

42. Each of the foregoing statements is false. Defendant knew or should have known that these statements were false at the time of publication or published them with reckless disregard for their truth or falsity.

43. The statements were published to third parties in a form accessible to audiences in the United States, Europe, and Palestine, and have caused severe and irreparable injury to Plaintiffs' personal, professional, and commercial reputations.

44. The statements constitute defamation per se under Florida law, as they impute to Plaintiff Rami Ghassan Bezrah conduct constituting crimes, and are injurious to his business or professional reputation.

45. As a direct and proximate result of Defendant's defamatory conduct, Plaintiffs have suffered actual damages including damage to their reputation, loss of business opportunities, loss of professional standing, emotional distress, and other compensatory damages, together with punitive damages, in amounts to be proven at trial.

## COUNT V
### PSYCHOLOGICAL HARM TO MINORS
*(Florida & Federal Child Protection Laws; Intentional Infliction of Emotional Distress)*
(Against Defendant Qashir)

46. Plaintiffs reallege and incorporate by reference paragraphs one (1) through twenty (20) as if fully set forth herein.

47. All three minor Plaintiffs, KRB (a minor), LRB (a minor), and ARB (a minor) and Amro (age 18 at filing) have been subjected to documented patterns of psychological abuse and coercion at the hands of Defendant, their biological mother.

48. Defendant's acts constituting psychological harm to the minor Plaintiffs include, without limitation:

49. (a) Established physical and psychological abuse during the period when the children resided with Defendant in early childhood;

(b) Forced coaching and compulsion to memorize predetermined answers prior to their United States Embassy visa interview — documented in preserved text messages — constituting undue influence and psychological coercion of minors;

(c) Explicit threats to "burn everything to the ground" unless the children complied with traveling to the United States, notwithstanding their clear and documented refusal — constituting terroristic threats directed at minor children;

(d) Repeated and systematic incitement against their father and his family over the course of years, creating a psychologically toxic environment; and

(e) Complete cessation of communication with Plaintiff KRB (a minor) for several months.

50. Defendant's public broadcasting of highly sexualized and criminal accusations against the children's father, and accusations against their paternal grandmother, have caused the minor Plaintiffs acute psychological distress, shame, and social embarrassment within their school community and peer group in China.

51. Defendant's conduct in publishing a video of Plaintiff Amro Rami Bezrah in which he visibly displayed anxiety and psychological distress, and in which he explicitly requested that Defendant stop filming — which request she ignored — constitutes an intentional, extreme, and outrageous act directed at a minor child.

52. Defendant's conduct constitutes intentional infliction of emotional distress, child abuse under applicable Florida and federal law, and a knowing and willful disregard for the psychological wellbeing of minor children.

53. As a direct and proximate result of Defendant's conduct, the minor Plaintiffs have suffered, and continue to suffer, severe psychological harm, emotional distress, anxiety, and other damages in amounts to be proven at trial, together with punitive damages.

## COUNT VI
### COERCION AND THREATENING COMMUNICATIONS
*(18 U.S.C. § 875 — Interstate Threats)*
(Against Defendant Qashir)

54. Plaintiffs reallege and incorporate by reference paragraphs one (1) through twenty (20) as if fully set forth herein.

55. Pursuant to 18 U.S.C. § 875(c), it is unlawful to transmit in interstate or foreign commerce any communication containing any threat to injure the person of another. Pursuant to 18 U.S.C. § 875(d), it is unlawful to transmit in interstate or foreign commerce any communication containing a threat to injure the property or reputation of the addressee or of another, or any threat to accuse the addressee or any other person of a crime.

56. Defendant transmitted, through interstate and international channels of electronic commerce, including WhatsApp messages and social media communications, explicit threats directed at Plaintiffs including, without limitation, threats to "burn everything to the ground" if the children refused to comply with her demands to travel to the United States.

57. Defendant additionally transmitted communications threatening to injure the reputation of Plaintiff Rami Ghassan Bezrah by accusing him of crimes, and carried through with those threats by publishing the false and defamatory accusations described herein across international social media platforms.

58. Defendant's threatening communications were transmitted through facilities of interstate and international commerce, including electronic mail, social media platforms, and messaging applications.

59. As a direct and proximate result of Defendant's threatening communications, Plaintiffs have suffered severe emotional distress, fear, and other damages in amounts to be proven at trial, together with punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, RAMI GHASSAN BEZRAH, AMRO RAMI BEZRAH, KRB, LRB, and ARB, respectfully request that this Court:

A. That this Court take jurisdiction of the Parties and subject matter asserted herein.

B. Enter judgment in favor of Plaintiffs and against Defendant on all Counts of this Complaint;

Page 16

C.  Award compensatory damages in excess of $75,000.00, exclusive of interest and costs, in amounts to be proven at trial;

D.  Award statutory damages pursuant to 18 U.S.C. § 2520 for violations of the Federal Wiretap Act;

E.  Award punitive damages in an amount sufficient to deter Defendant and others similarly situated from engaging in such conduct in the future;

F.  Grant preliminary and permanent injunctive relief enjoining Defendant from: (i) publishing, broadcasting, or distributing any further false, defamatory, or harassing content concerning Plaintiffs; (ii) recording or publishing any private communications of or concerning Plaintiffs without all-party consent; and (iii) engaging in any further acts of cyberstalking, harassment, or threatening communications directed at Plaintiffs;

G.  Order Defendant to publish a full and fair retraction of all defamatory statements on the same platforms and in the same languages in which they were originally published;

H.  Award attorney's fees and costs to the extent permitted by applicable law, including pursuant to 18 U.S.C. § 2520; and

I.  Grant such other and further relief as this Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

May 31, 2026

Martin G. McCarthy, P.A.
Counsel for Plaintiffs
430 S. Dixie Highway
Suite 211
Coral Gables, FL 33136
Tel: (305)522-6224
Email: mccarthy@myattorneyservices.com

By: /s/ Martin McCarthy

Martin G. McCarthy, Esq.
Florida Bar No. 0149896